IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RUSSELL DODD,

      Plaintiff,                                  No. CIV S-11-1603 JAM EFB PS

   vs.

FEDERAL HOME LOAN MORTGAGE
CORPORATION,
                                                         ORDER AND
      Defendant.                             FINDINGS AND RECOMMENDATIONS
_____/

      This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to

Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  Plaintiff filed a

complaint against Federal Home Loan Mortgage Corporation's ("Freddie Mac") and various doe

defendants on June 14, 2011.  Compl., Dckt. No. 1 at 1, 3.  Freddie Mac now moves to dismiss

that complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Dckt. No. 6.

Plaintiff opposes the motion and seeks to consolidate this action with an unlawful detainer action

currently pending in Sacramento County Superior Court.  Dckt. No. 9.

I.     BACKGROUND

      In this action, plaintiff challenges the origination of a refinance loan and the foreclosure

sale of his home.  *See generally* Compl., Dckt. No. 1.  Plaintiff and his wife purchased the

residential property at 3548 Domich Way, Sacramento, CA 95821 ("the subject property") in

February 2002. *Id.* ¶ 35.  On or about May 1, 2006, plaintiff and wife entered into a $241,500.00 refinance loan agreement with LoanCity.[1]  *Id.* ¶ 39.  Plaintiff planned to use the loan monies to purchase an investment property.  *Id.* ¶ 40.

The refinance loan closed in May 2006 as evidenced by the Deed of Trust recorded against the subject property on May 5, 2006.  *Id.* ¶ 39; *see also* Def.'s Req. for Jud. Notice, Dckt. No. 6-2 Ex. A.[2]  The Deed of Trust lists the borrowers as plaintiff and his wife, the Lender as LoanCity, the Trustee as Chicago Title Company, and Mortgage Electronic Registration Systems ("MERS") as a nominee for the Lender and the Lender's successor and assigns.[3]  *Id.*  MERS is also a beneficiary under the Deed of Trust.  *Id.*  On May 1, 2006, plaintiff and his wife executed an Adjustable Rate Mortgage Note for the subject property.  *Id.*  On November 2, 2009, MERS executed a Assignment of Deed of Trust granting all of Loancity's beneficial interest in the Deed of Trust to CitiMortage, Inc. ("CitiMortgage").  Dckt. No. 1 ¶ 76.  On November 23, 2009, CitiMortage, through Cal Western Reconveyance Corporation ("Cal Western"), recorded a Notice of Default.  Def.'s Req. for Jud. Notice, Dckt. No. 6-2 Ex. B.  On January 19, 2010 MERS, as servicing agent for Chicago Title Company ("Chicago Title Company"), recorded a Substitution of Trustee, wherein it substituted Cal Western as trustee in place of Chicago Title Company.  *Id.* Ex. C.  On February 24, 2010, Cal Western recorded a Notice of Trustee's Sale setting the sale of the subject property for March 16, 2010.  *Id.* Ex. D.  On January 20, 2011, the

---

[1] Plaintiff and his wife executed the Deed of Trust as joint tenants; however, plaintiff brings this action as an individual.

[2] Freddie Mac's requests for judicial notice of the exhibits cited herein are granted. Judicial notice may be taken of "adjudicative facts" (e.g., court records, pleadings, etc.) and other facts not subject to reasonable dispute and either "generally known" in the community or "capable of accurate and ready determination by resort to courses whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b).  A court may also take judicial notice of court records.  *See MCIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

[3] Plaintiff's complaint specifically states that neither LoanCity nor MERS is a defendant in this action.  Dckt. No. 1 at 5.

sale occurred and the subject property reverted back to CitiMortgage as the highest bidder at the sale, paying $172,213.00.  *Id.* Ex. E.

Plaintiff's complaint alleges fifteen causes of action, which appear from the allegations to be asserted against a variety of defendants.[4]  *See generally* Dckt. No. 1.  The first, second, fifth, and sixth causes of action challenge the constitutionality of California Civil Code sections 2924-2924(I) under 42 U.S.C. §§ 1981, 1982, and 1983.  *Id.* ¶¶ 105-117, 140-159.  The third cause of action requests that the court declare California Civil Code section 1714.10 unconstitutional because it violates 42 U.S.C. § 1981 by creating a special class of privileged citizens, and the fourth cause of action claims that Section "1714.10 does not immunize Citibank, N.A., CitiMortgage, N.A., Cal Western Recon Trustee Servicing Solutions Nor Their Attorneys."  *Id.* ¶¶ 127-39; *see also id.* at 33.  Plaintiff's seventh cause of action seeks injunctive relief staying Cal Western's sale of plaintiff's home and eviction of plaintiff; the eighth cause of action seeks accounting relief; and the tenth cause of action seeks a declaratory judgment that no valid contract exists between plaintiff and CitiMortgage.  *Id.* ¶¶ 160-75, 201-20.  Plaintiff also alleges claims for unfair debt collection practices and predatory lending (ninth cause of action); slander of title (eleventh cause of action); fraud or negligent misrepresentation (twelfth cause of action); quiet title (thirteenth cause of action); intended third party beneficiary for breach of contract (fifteenth cause of action); and negligence (sixteenth cause of action).  *Id.* ¶¶ 176-200, 221-64.

Although the allegations appear to be asserted against a variety of defendants, plaintiff has only named defendant Freddie Mac in the action.  *See id.* at 1, 2, 5.  Freddie Mac's alleged role in the origination of plaintiff's refinance loan contract and the nonjudicial foreclosure sale of his home is unclear.  The complaint includes the following allegations against Freddie Mac:

////

////

---

[4] Although the complaint purports to state sixteen causes of action, the complaint does not include a fourteenth cause of action.

•    "Plaintiff . . . complain[s] of damages inflicted by the slander of title and conspiracy to defraud committed by Freddie Mac, and therefore seek[s] quiet title to real estate located in Sacramento County, California, from Freddie Mac, by and through their so called servicing Trustees, agents or nominees at [Cal Western]." *Id.* ¶ 1.

•    "Apparently Freddie Mac became involved in the subprime 'mortgages' sold to investors without an actual asset backing, where the only 'security' is the belief that the price will continue to rise and the 'owner' will in fact pay only the interest (and in many cases less than the interest) is not a mortgage at all." *Id.* ¶ 5.

•    In December 2009, plaintiff was contacted by "Freddie Mac Prommis Homeownership Solutions" in an attempt to modify his loan.  In response, he submitted a set of required documents, at least half of which were never acknowledged.  Plaintiff called Freddie Mac multiple times a day to follow up about a loan modification, but was given contradictory information about what documents had been received and which documents were still needed to process a loan modification.  *Id.*  ¶ 48.

•    When plaintiff's home was put up for auction, Freddie Mac reduced the principal of his loan from $285,000 to $180,000.  Plaintiff filed this complaint . . . to investigate why they would not reduce his payment; 2) why his documents appeared to have been deliberately misplaced; 3) why these foreclosing entities have been allowed to receive funds to modify loans and yet fail to do so; and 4) is the government benefiting or complicit in this fraud upon the taxpayers . . . ." *Id.* ¶ 55.

## II.    Motion to Dismiss

Freddie Mac now moves to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) for failure to state a claim, arguing that because plaintiff fails to assert any claims against Freddie Mac, all causes of action against Freddie Mac should be dismissed with prejudice.  Dckt. No. 6.

### A.    Standard of Review

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff

4

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). However, the court's liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

The court may consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986). A pro se litigant is entitled to notice of

the deficiencies in the complaint and an opportunity to amend, unless the deficiencies could not

be cured by amendment.  *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

B.      Plaintiff's Claims

Plaintiff's entire complaint against Freddie Mac must be dismissed for failure to state a

claim.  The majority of plaintiff's claims fail because plaintiff has not sufficiently alleged

Freddie Mac's role in the origination of his loan or in the nonjudicial foreclosure sale of his

home.  Plaintiff specifically notes that neither MERS nor LoanCity are defendants.  Dckt. No. 1

at 5.  And, while plaintiff alleges most claims against CitiMortgage and Cal Western, neither of

those entities has been named as a party or has been served in this action.  Additionally, although

plaintiff makes certain allegations which suggest plaintiff was contacted by Freddie Mac to

execute a home loan modification and that Freddie Mac made certain representations to plaintiff

about modifying plaintiff's loan to avoid default and foreclosure, as provided in greater detail

below, those allegations do not sufficiently state claims for fraud or negligent misrepresentation.

1.      Constitutionality of California Civil Code §§ 2924-2924(I) (Claims 1, 2, 5, 6)

Plaintiff's first, second, fifth, and sixth causes of action challenge the constitutionality of

California Civil Code sections 2924-2924(I) ("Section 2924 ") under 42 U.S.C. §§ 1981, 1982,

and 1983.  Dckt. No. 1 ¶¶ 105-117, 140-159.  Although plaintiff's claims challenging the

constitutionality of Section 2924 are mostly unintelligible and the import of plaintiff's seemingly

random statutory citations is unclear, it appears plaintiff purports to argue that Section 2924

violates due process and contract rights.  *Id.*  Specifically, plaintiff alleges that Section 2924 is

unconstitutional because it denies certain classes of people, namely mortgagors, the equal rights

to inherit, purchase, lease, sell, hold, and convey real and personal property within the meaning

of 42 U.S.C. §§ 1982 and 1983.  *Id.* ¶¶ 112, 141, 153.  Plaintiff further claims that Section 2924

impairs and interferes with certain classes' right to make and enforce contracts, sue, be parties,

give evidence, and enjoy the full and equal benefit of all laws and proceedings for the security of

persons and property withing the meaning of 42 U.S.C. § 1981.  *Id.*  Plaintiff contends the

enforcement and application of the non-judicial foreclosure process infringes on the civil rights of mortgagors and abolishes the right to private property. *Id.* ¶¶ 114-115.  Plaintiff also alleges that he is Oriental. *Id.* ¶ 117.  Plaintiff requests that the court declare the custom, practice, and policy of enforcement of non-judicial foreclosures by California courts as unconstitutional, declare Section 2924 unconstitutional on its face, and order that foreclosures against plaintiff or any person similarly situated in California and transfers effectuated under Section 2924 are null and void. *Id.* ¶¶ 121-22, 124, 147, 158.

Freddie Mac moves to dismiss these claims, arguing that plaintiff does not actually allege that his due process or private contractual rights were violated, plaintiff's allegations supporting the claims do not implicate Freddie Mac, and the California Supreme Court has held that the statutory framework governing nonjudicial foreclosures is constitutional.  Dckt. No. 6 at 4.

For the reasons set forth by Freddie Mac, plaintiff's §§ 1981, 1982, and 1983 claims against Freddie Mac regarding the constitutionality of Section 2924 must be dismissed.  Plaintiff does not state a claim under § 1981 because plaintiff has not identified any contractual relationship that Freddie Mac impaired, nor has he alleged that Freddie Mac acted with any racial or class-based discriminatory animus.  In fact, Freddie Mac was not a party to the original refinance loan. *See* 42 U.S.C. § 1981 ("[a]ll persons shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."); *Schiff v. Barrett*, 2010 WL 2803037, at *4 (E.D. Cal. July 14, 2010) (providing that to state a claim under § 1981 a plaintiff must identify an "impaired contractual relation" by showing that intentional racial discrimination prevented the creation of a contractual relationship or impaired an existing contractual relationship).

Nor has plaintiff stated a claim under § 1982. *See* 42 U.S.C. § 1982 ("All citizens . . . shall have the same right . . . as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."); *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 551 (9th Cir. 1980) (providing that to state a claim under § 1982 a plaintiff must

demonstrate that (1) he is a member of a racial minority; (2) he applied for and was qualified to rent or purchase certain property or housing; (3) he was rejected; and (4) the housing or rental opportunity remained available thereafter).  While plaintiff alleges he is "Oriental," he has not alleged that he applied for and was qualified to purchase certain property and was rejected by Freddie Mac.  Further, the fact that plaintiff's 2006 refinance loan was approved by non-party LoanCity precludes plaintiff's ability to assert a § 1982 claim since it cannot be said that non-party LoanCity refused to contract with plaintiff on the basis of race.

Plaintiff also fails to state a claim under § 1983 since plaintiff does not allege that Freddie Mac violated plaintiff's constitutional or statutory rights, nor does he allege that Freddie Mac was a state actor or that it was otherwise acting under color of law.[5]  *See West v. Atkins*, 487 U.S. 42, 48 (1988) (providing that to state a claim under § 1983 a plaintiff must allege: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law).

Because it appears amendment of these claims against Freddie Mac would be futile, plaintiff's claims regarding the constitutionality of Section 2924 (claims 1, 2, 5, and 6) should be dismissed without leave to amend.

2.  <u>Constitutionality of California Civil Code Section 1714.10</u> (Claims 3 and 4)

Plaintiff's third and fourth causes of action relate to California Civil Code section 1714.10 ("Section 1714.10").  The third cause of action requests that the court declare Section 1714.10 unconstitutional because it violates 42 U.S.C. § 1981 by creating a special class of

---

[5] Although plaintiff appears to be attempting to challenge his foreclosure proceedings, a § 1983 action is not the proper vehicle to do so.  Non-judicial foreclosure proceedings are a purely private remedy and do not constitute state action sufficient to support a § 1983 claim. *Apao v. Bank of New York*, 324 F.3d 1091, 1092-95 (9th Cir. 2003) (holding nonjudicial foreclosure sale of property does not constitute state action), *cert. denied*, 540 U.S. 948 (2003); *see also Hoffman v. Indymac Bank FSB*, 2010 WL 3463641, at *3 (N.D. Cal. Aug. 31, 2010) (stating that "plaintiff cannot base a § 1983 claim on her allegations that some of the defendants were involved, in various ways, with either a nonjudicial foreclosure sale or a subsequently-filed unlawful detainer action; such activities do not, as a matter of law, constitute state action").

privileged citizens, and the fourth cause of action claims that "[Section] 1714.10 does not immunize Citibank, N.A., CitiMortgage, N.A., Cal Western Recon Trustee Servicing Solutions Nor Their Attorneys."  Dckt. No. 1 ¶¶ 128-29; *id.* at 33.

Section 1714.10 requires a plaintiff to obtain a court order prior to filing any claim premised upon an attorney's conspiracy with a client.  Cal. Civ. Code § 1714.10(a).  It is unclear why or how plaintiff contends Section 1714.10 violates his rights.  Regardless, because plaintiff fails to make any allegations against Freddie Mac regarding Section 1714.10, let alone any facts supporting a § 1981 claim against Freddie Mac, plaintiff's third and fourth claims against Freddie Mac must also be dismissed without leave to amend.[6]

### 3. Injunctive Relief (Claim 7)

Plaintiff's seventh cause of action seeks injunctive relief staying Cal Western's sale of plaintiff's home and eviction of plaintiff.  Dckt. No. 1 ¶¶ 160-69.  However, as Freddie Mac points out, this claim does not include any allegations against Freddie Mac and because the subject property has already been sold at a foreclosure sale, the request is moot.  Dckt. No. 6 at 5; *see also Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) ("Mootness is a jurisdictional issue, and federal courts have no jurisdiction to hear a case that is moot, that is, where no live controversy exists."); *Ruvalcaba v. City of LA*, 167 F. 3d 514, 521 (9th Cir. 1999) ("If there is no longer a possibility that [plaintiff] can obtain relief for his claim that claim is moot and must be dismissed for lack of jurisdiction.").  Therefore, plaintiff's seventh claim against Freddie Mac should be dismissed without leave to amend.

////

////

---

[6] Additionally, to the extent plaintiff's fourth claim purports to allege a conspiracy claim against Freddie Mac, that claim must be dismissed since there are no factual allegations supporting any conspiracy by Freddie Mac.  Rather, plaintiff's allegations relate to Cal Western, its attorneys, and the judges of the County of Sacramento Superior Court and Superior Courts throughout the state.  Dckt. No. 1 ¶ 138.

4. <u>Accounting Relief</u> (Claim 8)

Plaintiff also seeks an accounting, alleging that "defendants have refused to provide an accurate account statement or allow [p]laintiff's representatives to audit defendants books and records . . . ." Dckt. No. 1 ¶ 171.  Plaintiff alleges that a controversy exists between plaintiff and CitiMortgage with respect to the correct amount of money owed by plaintiff.  *Id.*

As a threshold matter, plaintiff does not assert this claim against Freddie Mac.  Further, the basis for plaintiff's accounting relief claim is unclear.  A loan servicer is not required to provide an accounting pursuant to § 2605 of the Real Estate Settlement Procedures Act ("RESPA").  In short, "there is no statutory basis for an accounting under RESPA." *Aniel v. Litton Loan Servicing, LP*, 2011 WL 6355258, at *5 (N.D. Cal. Feb. 11, 2011) (quoting *Farias v. FCM Corp.*, 2010 WL 4806894, at *3 (S.D. Cal. Nov. 18, 2010)); *see also Orozco v. DHI Mortgage, Co. Ltd, LP*, 2010 WL 2757283, at *6 (S.D. Cal. July 13, 2010) (no statutory basis for accounting under 12 U.S.C. § 2605).[7]  If the court were to construe plaintiff's complaint as seeking an accounting independent of RESPA, under California law any right to an accounting is derivative and depends on the validity of a plaintiff's underlying claims.  *Duggal v. G.E. Capital Commc'ns Servs., Inc.*, 81 Cal. App. 4th 81, 95 (2000); *Union Bank v. Superior Court*, 31 Cal. App. 4th 573, 593-94 (1995).  Here, the court finds that plaintiff has not sufficiently pled any of his claims of misconduct against Freddie Mac.  Accordingly, plaintiff does not have a right to an accounting from Freddie Mac.  Additionally, plaintiff has not alleged that he is due any monies from Freddie Mac.  Absent such an allegation, plaintiff has no right to an accounting.  *See Baxter v. Krieger*, 157 Cal. App. 2d 730, 732 (1958).  Therefore, plaintiff's eighth claim for an accounting from Freddie Mac must be dismissed without leave to amend.

/////

---

[7] Plaintiff has also failed to allege that he submitted a proper qualified written request for loan servicing information to Freddie Mac.  Nor has plaintiff alleged that he suffered any actual damage as a result of the alleged failure to provide an accounting or loan file information.

1        5.  <u>Unfair Debt Collection and Predatory Lending</u> (Claim 9)

2        Plaintiff's ninth cause of action alleges that "[d]efendants" have violated provisions of

3    the federal Fair Debt Collection Act ("FDCPA") and the California Rosenthal Fair Debt

4    Collection Practices Act ("RFDCPA"), and that defendants have engaged in predatory lending in

5    violation of RESPA and the Truth in Lending Act ("TILA").  Dckt. No. 1  ¶¶ 177, 183, 195, 197.

6    Freddie Mac moves to dismiss this claim, arguing that plaintiff fails to specify which provisions

7    of the cited predatory lending statutes were violated, fails to allege any facts in support of those

8    violations, and does not assert the claim against Freddie Mac.  Dckt. No. 6 at 6.

9            a.       *Unfair Debt Collection*

10       The purpose of the FDCPA and the RFDCPA is to "prohibit debt collectors from

11   engaging in unfair and deceptive practices in the collection of consumer debts, and to require

12   debtors to act fairly into entering into and honoring such debts."  *See* 15 U.S.C. § 1692; *see also*

13   Cal. Civ. Code § 1788.  Further, the FDCPA applies only to a "debt collector," defined as "a

14   person who uses any instrumentality of interstate commerce or the mail in any business the

15   principal purpose of which is the collection of any debts, or who regularly collects or attempts to

16   collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15

17   U.S.C. §1692a.  The definition explicitly excludes creditors, as well as loan originators or

18   assignees who obtained the right to collect on loan when it was not in default.  15 U.S.C.

19   § 1692a(4), § 1692a(6)(A) or (B), § 1692a(ii) and (iii).  Additionally, to be liable under the

20   RFDCPA, a defendant must be a "debt collector."  *Izenberg v. ETS Services*, LLC, 589 F.

21   Supp.2d 1193, 1199 (C.D. Cal. 2008).  A "debt collector" under the RFDCPA is defined as "any

22   person who, in the ordinary course of business, regularly, on behalf of himself or herself or

23   others, engages in debt collection."  Cal. Civ. Code § 1788.2(c).  The "activity of foreclosing on

24   [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the"

25   FDCPA or the RFDCPA.  *Tina v. Countrywide Home Loans, Inc.*, 2008 WL 4790906, at *6

26   (S.D. Cal. Oct. 30, 2008); *see also Gamboa v. Trustee Corps*, 2009 WL 656285, at *4 (N.D. Cal.

1    Mar.12, 2009) ("the law is clear that foreclosing on a property pursuant to a deed of trust is not a

2    debt collection within the meaning of the RFDCPA or the FDC[P]A.").

3           In addition to his failure to allege the other necessary elements of the FDCPA and

4    RFDCPA claims, plaintiff does not and cannot allege that Freddie Mac is a debt collector within

5    the meaning of the FDCPA or the RFDCPA, nor does plaintiff allege Freddie Mac played any

6    role in the collection of mortgage payments on the subject property.  Further, the FDCPA and

7    RFDCPA do not apply to foreclosure proceedings.  Accordingly, plaintiff's claim against

8    Freddie Mac for violations of the FDCPA and the RFDCPA must also be dismissed without

9    leave to amend.

10                          b.      *Predatory Lending*

11          Plaintiff also alleges that "predatory lending practices" include engaging in aggressive,

12   high pressure or misleading tactics and "deception or fraud, manipulation of borrowers through

13   aggressive sales tactics, or taking unfair advantage of a borrower," and that "CitiBank, N.A."

14   engaged in this type of conduct toward plaintiff.  Dckt. No. 1 ¶¶ 182-183.  However, plaintiff

15   does not allege that Freddie Mac engaged in predatory lending.  Moreover, California's

16   predatory lending laws only prohibit specific acts in connection with "covered loans," and

17   plaintiff has not alleged that his loan was a "covered loan" or that Freddie Mac engaged in any

18   acts prohibited by California law.  Cal. Fin. Code § 4973, 4970(b).  Amendment of this claim

19   against Freddie Mac would also be futile and, therefore, the claim must be dismissed without

20   leave to amend.

21                          c.      *RESPA*

22          Plaintiff alleges that defendants are subject to RESPA and "placed loans for the purpose

23   of unlawfully increasing and otherwise obtaining yield spread fees, excess charges, and amounts

24   in excess of what would have been lawfully earned."  Dckt. No. 1 ¶ 197.  Plaintiff alleges the

25   lenders acted either individually or jointly as servicers of his loan and violated the requirements

26   of 12 U.S.C. § 2605(b) "in that the servicing contract and duties were transferred and

hypothecated without required notice." *Id.* ¶ 198.  Plaintiff contends these violations require

rescission and or cancellation of his loan and return of all funds received by CitiMortgage or its

predecessor, CitiBank.  *Id.* ¶ 199.

Plaintiff's RESPA claim fails on several grounds.  First, plaintiff does not assert any facts

to support a RESPA claim against Freddie Mac, and CitiMortgage and CitiBank are not parties

to this action.  Moreover, plaintiff fails to state a claim under § 2605.  Section 2605(b) provides

that "[e]ach servicer of any federally related mortgage shall notify the borrower in writing of any

assignment, sale or transfer of the servicing of the loan to any other person."  12 U.S.C.

§ 2605(b).  Plaintiff's complaint fails to allege any facts regarding the alleged transfer of the

servicing contract, including when the transfer occurred and to whom the contract was

transferred.  Nor does it allege that plaintiff suffered "any actual damages . . . as a result of the

failure" to provide notice, or any "pattern or practice of noncompliance."  12 U.S.C.

§ 2605(f)(1).

Additionally, although plaintiff alleges that "[d]efendants . . . placed loans for the

purpose of unlawfully increasing or otherwise obtaining yield spread fees and sums in excess of

what would have been lawfully earned," Dckt. No. 1 ¶ 197, "[n]o per se rule exists in applying

RESPA . . . to [yield spread fees]."  *Bjustrom v. Trust One Mortgage Corp.*, 322 F.3d 1201, 1208

(9th Cir. 2003).  Instead, a court must conduct a loan-specific analysis of whether the total

mortgage broker compensation was reasonable.  *See id.*  The single allegation quoted above is

insufficient to state a RESPA claim that the yield spread fees charged to plaintiff were

unreasonable since plaintiff fails to allege what services were performed by Freddie Mac, when

they were performed, and what fees, if any, were charged by Freddie Mac for those services.  *See*

*Bjustrom*, 322 F.3d at 1208.  Therefore, plaintiff's RESPA claim against Freddie Mac will be

dismissed.  Plaintiff should be given leave to amend, so long as he can cure these deficiencies.

////

////

1          d.      *TILA*

2          Plaintiff further alleges that defendants have violated TILA by failing "to validate and

3    otherwise make a full accounting and required disclosures as to the true finance charges and

4    fees," by improperly retaining funds belonging to plaintiff, and by failing to disclose the

5    ownership status of his loan.  Dckt. No. 1 ¶ 195.  Plaintiff seeks rescission and cancellation of

6    the loan and the return of all funds received by defendants.  *Id.* ¶ 196.

7          Plaintiff's TILA claim against Freddie Mac must be dismissed since plaintiff does not

8    allege which provision of TILA Freddie Mac violated, nor does he allege how Freddie Mac

9    violated TILA.  Freddie Mac was not the lender in the subject loan transaction and plaintiff fails

10   to assert any claims against Freddie Mac related to the subject loan origination.  Moreover,

11   plaintiff's right to rescission terminated when the property was sold at auction.  *See* 15 U.S.C.

12   § 1635(f) ("an obligor's right of rescission shall expire three years after the date of

13   consummation of the transaction or upon the sale of the property, whichever occurs first"); *see*

14   *also Usher v. Chase Home Fin.*, 2010 WL 4008496, at *2 (E.D. Cal. Oct. 12, 2010) (right to

15   rescission under TILA terminated when home was sold in a foreclosure sale).  Therefore,

16   plaintiff's TILA claim against Freddie Mac must be dismissed without leave to amend.

17          6.  Declaratory Judgment (Claim 10)

18          Plaintiff requests in count 10 that the court declare that no valid mortgage contract exists

19   between plaintiff and CitiMortgage due to lack of consideration.  Dckt. No. 1 ¶ 204.  Freddie

20   Mac moves to dismiss plaintiff's request, arguing that plaintiff does not assert any claim against

21   Freddie Mac, that declaratory relief is a remedy and not an independent cause of action, and that

22   plaintiff cannot claim there was a lack of consideration since plaintiff admits he refinanced the

23   subject property and used the funds to purchase an investment property.  Dckt. No. 6 at 6, 7.

24          First, plaintiff has failed to assert this claim against Freddie Mac, nor has he included any

25   allegations regarding Freddie Mac's role with respect to the origination of the subject loan.  Nor

26   has plaintiff shown he is entitled to declaratory relief in general since there is no real, immediate

14

1    controversy to adjudicate between plaintiff and Freddie Mac. *Maryland Cas. Co. v. Pac. Coal &*

2    *Oil Co.*, 312 U.S. 270, 273 (1941) (in seeking declaratory relief, there must be a substantial

3    controversy, between parties having adverse legal interests, of sufficient immediacy and reality

4    to warrant issuance of a declaratory judgment).

5        Moreover, the declaratory relief plaintiff seeks is commensurate with the relief sought

6    through his other causes of action. Thus, the declaratory relief claim is duplicative and

7    unnecessary. *See Permpoon v. Wells Fargo Bank Nat. Ass'n*, 2009 WL 3214321, at *5 (S.D.

8    Cal. Sep. 29, 2009). Accordingly, plaintiff's request for declaratory relief should be dismissed

9    without leave to amend.

10        7. <u>Slander of Title</u> (Claim 11)

11        Plaintiff alleges that through the foreclosure proceedings, "[d]efendants slandered

12    [p]laintiff's title to the [s]ubject property." Dckt. No. 1 ¶ 226. Plaintiff alleges that none of the

13    "defendants" are trustees, beneficiaries, or assignees and thus they were not authorized to

14    commence and conduct the foreclosure proceedings against the subject property. *Id.* ¶ 225.

15    Plaintiff alleges Cal Western did not have the requisite authority to record a Notice of Default,

16    Substitution of Trustee, Assignment of Deed of Trust, or Notice of Trustee's Sale, nor was it

17    authorized to conduct a trustee's sale. *Id.* ¶¶ 222-24.

18        Plaintiff's slander of title claim fails on multiple grounds. First, Freddie Mac did not

19    cause a Notice of Default, Substitution of Trustee, Assignment of Deed of Trust, Notice of

20    Trustee's Sale, or Trustee's Deed Upon Sale to be recorded against the subject property. *See*

21    Def.'s Req. for Jud. Notice, Dckt. No. 6-2, Ex. A, B, C, D, E, F. Second, slander of title is "a

22    tortious injury to property resulting from unprivileged, false, malicious publication of

23    disparaging statements regarding the title to property owned by plaintiff, to plaintiff's damage."

24    *Southcott v. Pioneer Title Co.*, 203 Cal. App. 2d 673, 676 (1962). Plaintiff's slander of title

25    claim also fails because he admits that he defaulted on his loan and since notices filed pursuant

26    to a non-judicial foreclosure action constitute privileged communications. Cal. Civ. Code

§ 2924(d).  Accordingly, this claim must be dismissed without leave to amend.

### 8.  Fraudulent and Negligent Misrepresentation

Plaintiff alleges "fraud or negligent misrepresentation" against Cal Western, alleging that Cal Western could not have acted in good faith within the meaning of California Civil Code section 2924 because as real estate professionals, they knew or should have known that because the details of the loan contract were so unfair that they were participating and facilitating fraud. Dckt. No. 1 ¶ 229.  Plaintiff further alleges that CitiMortgage foreclosed on plaintiff's property, knowing that defendants did not have a right to foreclosure on plaintiff's home. *Id.* ¶ 230. Freddie Mac moves to dismiss on two grounds: first, the public land records establish that CitiMortgage had a right to foreclosure on plaintiff's property, and second, plaintiff has not asserted a fraud claim against Freddie Mac.  Dckt. No. 6 at 8.

Freddie Mac is correct that plaintiff's allegations that non-parties Cal Western and CitiMortgage knew or should have known that their actions constituted fraud are insufficient to state a fraud claim against Freddie Mac.  However, plaintiff also alleges in his complaint that he was contacted by "Freddie Mac Prommis Homeownership Solutions" to execute a home loan modification and that Freddie Mac made certain representations to plaintiff about modifying plaintiff's loan to avoid default and foreclosure.  Dckt. No. 1 ¶ 48.  As currently plead, those allegations are insufficient to state a claim for fraud or for negligent misrepresentation against Freddie Mac.  "To state a claim for fraud, a plaintiff must plead (a) misrepresentation; (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003); *see generally* Cal. Civ. Code §§ 1709-10.  "In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The allegations must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  In

1  addition to the "time, place and content of an alleged misrepresentation," a complaint "must set

2  forth what is false or misleading about a statement, and . . . an explanation as to why the

3  statement or omission complained of was false or misleading." *Yourish v. Cal. Amplifier*, 191

4  F.3d 983, 993, n. 10 (9th Cir. 1999).  The complaint must also name the persons who made the

5  allegedly fraudulent statements.  *See Morris v. BMW of N. Am.*, LLC, 2007 WL 3342612, at *3

6  (N.D. Cal. 2007).

7       Here, plaintiff does not identify any specific misrepresentations or any specific facts

8  about the purported misrepresentations.  Indeed, the complaint fails to state who allegedly made

9  fraudulent misrepresentations on behalf of Freddie Mac, whether those speakers had authority to

10 speak, how the alleged misrepresentations were made, and any of the other facts necessary to

11 state a fraud claim.  Accordingly, plaintiff's claim for fraud or negligent misrepresentation

12 against Freddie Mac should be dismissed with leave to amend.

13             9.  Quiet Title (Claim 13)

14      Plaintiff's also brings a cause of action for quiet title to the subject property.  Dckt. No. 1

15 ¶¶ 232-46.  Plaintiff seeks to quiet title against Cal Western and CitiMortgage, alleging they are

16 not true holders of the note.  *Id.* ¶ 234.

17      To establish a claim for quiet title, plaintiff must file a verified complaint that alleges: (a)

18 a description of the property; (b) plaintiff's title as to which a determination is sought; (c) the

19 adverse claims to the title; (d) the date as to which the determination is sought; and (e) a prayer

20 for the determination of title.  Cal. Civ. Proc. Code § 761.020.  Here, plaintiff fails to explain the

21 grounds on which his claim is based, as required by section 761.020(c), other than a conclusory

22 allegation that defendants are not the holders in due course of the promissory note or deed of

23 trust for the property.  Nor has plaintiff alleged tender or the ability to offer tender.  *See Kelley v.*

24 *MERS*, 642 F. Supp.2d 1048, 1057 (N.D. Cal. 2009) ( "Plaintiffs have not alleged . . . that they

25 have satisfied their obligation under the Deed of Trust.  As such, they have not stated a claim to

26 quiet title."); *see also Distor v. U.S. Bank, N.A.*, 2009 WL 3429700, at *6 (N.D. Cal. Oct. 22,

2009) ("plaintiff has no basis to quiet title without first discharging her debt, and . . . has not

alleged that she has done so and is therefore the rightful owner of the property"). Here, plaintiff

defaulted on the subject loan and does not allege that he has since paid the outstanding balance.

Further, plaintiff's claims are not against Freddie Mac, but two non-parties, CitiMortgage

and Cal Western. Therefore, plaintiff's quiet title claim against Freddie Mac must be dismissed

without leave to amend.

10.  <u>Intended Third Party Beneficiary for Breach of Contract</u> (Claim 15)

Plaintiff alleges a claim for "third party breach of contract" against CitiBank. Dckt. No.

1 ¶¶ 247-56. Plaintiff argues CitiBank violated its servicer agreement with the United States

which requires CitiBank to abide by HAMP guidelines. *Id.* ¶ 248. Plaintiff argues CitiBank

failed to follow the HAMP guidelines by failing to evaluate plaintiff for a loan modification and

by foreclosing on a homeowner whose mortgage is owned by Fannie Mae before the homeowner

was evaluated for a HAMP modification. *Id.*

Freddie Mac moves to dismiss plaintiff's third party breach of contract claim, arguing

that plaintiff was evaluated for a HAMP modification and was denied because he failed to

submit all the requisite documentation and that plaintiff has not alleged that his loan was owned

by Fannie Mae. Dckt. No. 6 at 8-9. Freddie Mac also contends that there is no private right of

action under HAMP and plaintiff lacks standing to bring a claim for a HAMP violation, and that

regardless, plaintiff fails to assert the claim against Freddie Mac. *Id.*

Plaintiff's claim must be dismissed because plaintiff has failed to assert any claim against

Freddie Mac. Moreover, plaintiff has not and cannot successfully plead a cause of action for

third party breach of contract under HAMP. HAMP was created by Congress as part of the

Troubled Assets Relief Program, under the authority of the Emergency Economic Stabilization

Act of 2008, Pub.L. 110-343. Pursuant to this program, mortgage loan servicers enter into

Servicer Participation Agreements ("SPAs") with Fannie Mae, acting as the financial agent for

the United States. The servicer's obligations are set forth in the SPA, as well as in Program

1   Guidelines established by the Department of the Treasury.  *See Villa v. Wells Fargo Bank, N.A.*,

2   2010 WL 935680, at *1 (S.D. Cal. Mar. 15, 2010); *see also Escobedo v. Countrywide Home*

3   *Loans, Inc.*, 2009 WL 4981618, at *1 (S.D. Cal. Dec. 15, 2009).  Participating servicers are

4   required to consider all loans eligible under the program; however, they are not required to

5   modify mortgages.  *See Escobedo*, 2009 WL 4981618, at *2; *see also Hoffman v. Bank of Am.*,

6   N.A., 2010 WL 2635773, at *4 (N.D. Cal. June 30, 2010)

7           Numerous district courts within the Ninth Circuit have ruled that there is no express or

8   implied private right of action to sue lenders or loan servicers for violation of HAMP.  *See, e.g.,*

9   *Manabat v. Sierra Pac. Mortg. Co.*, 2010 WL 2574161, at *11 (E.D. Cal. June 25, 2010)

10  (dismissing plaintiff's wrongful foreclosure claim because there is no private right of action for

11  HAMP violations against lenders that receive HAMP funds); *Simon v. Bank of Am., N.A.*, 2010

12  WL 2609436, at *7 (D. Nev. June 23, 2010) ("[C]ourts have consistently held that [HAMP] does

13  not provide borrowers with a private cause of action against lenders for failing to consider their

14  application for loan modification, or even to modify an eligible loan.").  In addition, numerous

15  courts have determined that individual borrowers do not have standing to sue under a HAMP SPA

16  because they are not intended third-party beneficiaries of the SPA.  *See Morales v. Chase Home*

17  *Finance LLC*, 2011 , 1670045 at *9 (N.D. Cal. Apr. 11, 2011); *Hoffman*, 2010 WL 2635773, at

18  *4 (determining that the borrower was "an incidental and not an intended beneficiary to the

19  HAMP servicer's agreement"); *Zendejas v. GMAC Wholesale Mortg. Corp.*, 2010 WL 2629899,

20  at *3 (E.D. Cal. June 29, 2010).  Accordingly, plaintiff's claim for third party breach of contract

21  against Freddie Mac should be dismissed with prejudice.

22           11.  <u>Negligence</u> (Claim 16)

23           Plaintiff alleges negligence against CitiBank, arguing that he was at risk of foreclosure

24  and was wrongfully denied a HAMP modification causing his health to deteriorate, loss of

25  income and loss of his home. Dckt. No. 1 ¶ 258.  Plaintiff alleges CitiBank owed him a legal duty

26  to modify his loan under HAMP, that CitiBank breached that duty by not completing a HAMP

1   modification and by failing to supervise its servicing entities, and that CitiBank's negligence was

2   the proximate and legal cause of the loss of his home.  *Id.*  Freddie Mac argues plaintiff's

3   negligence claim should be dismissed because as a matter of law, financial institutions acting in

4   the scope of their conventional activities do not owe a duty of care to borrowers and further,

5   plaintiff does not assert negligence against Freddie Mac.  Dckt. No. 6 at 9-10.

6          First, plaintiff fails to allege negligence against Freddie Mac.  Instead, plaintiff claims that

7   non-party CitiBank was negligent.  Plaintiff's claim further fails because plaintiff cannot

8   demonstrate that Freddie Mac owed plaintiff a duty of care.  *See Nymark v. Heart Fed. S. & L.*

9   *Assn..*, 231 Cal.App.3d 1089, 1096 ("[A]s a general rule, a financial institution owes no duty of

10  care to a borrower when the institution's involvement in the loan transaction does not exceed the

11  scope of its conventional role as a mere lender of money."); *Oaks Mgmt. Corp. v. Superior Court*,

12  145 Cal.App.4th 453, 466, 51 Cal.Rptr.3d 561 (2006) ("Absent special circumstances a loan

13  transaction is at arms length and there is no fiduciary relationship between the borrower and

14  lender.").  Accordingly, the undersigned recommends plaintiff's negligence claim against Freddie

15  Mac be dismissed without leave to amend.

16         C.     Leave to Amend

17         If the district judge adopts these findings and recommendations and plaintiff elects to

18  amend his complaint against Freddie Mac as provided herein, or to name another otherwise

19  proper defendant, any such amended complaint shall be filed within thirty days from the date of

20  service of any such order adopting these findings and recommendations.  In any amended

21  complaint, plaintiff must plead against which defendant(s) he brings each cause of action and

22  what each defendant did to support relief under that cause of action.  The amended complaint

23  must bear the docket number assigned to this case and must be labeled "Amended Complaint."

24  Failure to timely file an amended complaint will result in a recommendation this action be

25  dismissed.

26  ////

III.   Motion to Consolidate

On October 10, 2011, plaintiff filed a Rule 42 motion to consolidate this action with plaintiff's unlawful detainer action currently pending in Sacramento County Superior Court.  Mot. to Consolidate, Dckt. No. 9 at 1-3.  Rule 42 provides that, "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions."  Fed. R. Civ. P. 42(a)(2).  A district court has "broad discretion to order consolidation of actions presenting a common issue of law or fact," and should "weigh[] the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause."  *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984).  However, because the court lacks subject matter jurisdiction to hear the unlawful detainer action, it cannot consolidate this action with the related wrongful foreclosure action.  *See Oregon Egg Producers v. Andrew*, 458 F.2d 382, 383 (9th Cir. 1972) (noting that federal courts may only consolidate actions which are properly before the court); *see also U.S. Bank Nat'l Ass'n v. Tyler*, 2010 WL 4918790, at *2 (N.D. Cal. Nov. 12, 2010) ("[T]he court must consider whether it has subject matter jurisdiction over the removed unlawful detainer action before it can consider whether the action should be consolidated with the related wrongful foreclosure action.").  Accordingly, plaintiff's motion to consolidate the instant case with the unlawful detainer action currently pending in state court must be denied.

IV.   Conclusion

Accordingly, IT IS ORDERED that:

1.  The status conference currently set for hearing on February 15, 2012 is vacated;[8] and

2.  The September 7, 2011 Order to Show Cause, Dckt. No. 8, is discharged.

////

////

---

[8] As a result, the parties are not required to submit status reports as provided in the June 14, 2011 order.  *See* Dckt. No. 4.  However, if the recommendation of dismissal herein is not adopted by the district judge, the undersigned will reschedule the status conference and require the parties to submit status reports.

Further, IT IS RECOMMENDED that:

1. Freddie Mac's motion to dismiss, Dckt. No. 6, be granted and plaintiff's complaint be dismissed in its entirety;

2. Plaintiff's motion to consolidate cases, Dckt. No. 9, be denied; and

3. Plaintiff be granted thirty days from the date of service of any order adopting these findings and recommendations to file an amended complaint as provided herein.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 19, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE